UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NUWAVE, LLC, | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) No. 16 C 4504 ) ) Judge Sara L. Ellis |
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

In this coverage action, Plaintiff NuWave, LLC ("NuWave") seeks to recover defense and indemnity costs from Defendant Cincinnati Specialty Underwriters Insurance Company ("Cincinnati") arising from a lawsuit filed against NuWave by the State of West Virginia through its Attorney General, *West Virginia v. Nu Wave, LLC*, No. 15-C-1864 (W.V. Cir. Ct.) (the "WVAG" suit). NuWave also seeks a declaratory judgment of Cincinnati's duty to defend and indemnify it in the WVAG action. The parties have filed cross-motions for judgment on the pleadings [58, 61 and 65][1] regarding the duty to defend. Because the facts alleged in the WVAG case do not fall under NuWave's insurance policy with Cincinnati, the Court finds that Cincinnati had no duty to defend NuWave in the WVAG case and thus grants Cincinnati's motion and denies NuWave's motion.

---

[1] NuWave filed the same motion twice.

## BACKGROUND[2]

### I. The Cincinnati Policy

NuWave signed two successive general liability insurance policies with Cincinnati (the "Policies") for the policy periods February 6, 2014 to February 6, 2015 and February 6, 2015 to February 6, 2016. Under the Policies, Cincinnati agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising' injury to which this insurance applies." Doc. 53 ¶ 12. Further, the Policies provided that Cincinnati had "the right and duty to defend the insured against any 'suit' seeking those damages." *Id.*

According to the Policies, Personal and Advertising Injury ("PAI") includes injury arising out of "oral or written publication, in any manner, of material that violates a person's right to privacy." *Id.* ¶ 14. The Policies do not define the right to privacy. The Policies also contain a number of exceptions to the PAI liability. On the basis of this portion of the Policies, NuWave sought coverage for the WVAG action. Cincinnati declined coverage three times. NuWave then instituted this coverage action.

### II. The WVAG Lawsuit

In October 2015, the West Virginia Attorney General, acting on behalf of his state, filed the WVAG complaint against NuWave in Circuit Court in West Virginia. The WVAG complaint alleged that NuWave engaged in unauthorized telemarketing, falsely represented that its products were "free" while charging exorbitant fees for shipping and handling, employed deceptive sales practices by representing that special offers on a product would end after a day

---

[2] In deciding the parties' cross-motions for judgment on the pleadings, the Court considers NuWave's amended complaint [53], Cincinnati's corrected answer and counterclaims [55], and NuWave's answer to Cincinnati's counterclaim [56] in the light most favorable to the non-moving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998); *Drager v. Bridgeview Bank*, No. 1:10-cv-7585, 2011 WL 2415244, at *3 (N.D. Ill. June 13, 2011) (court may consider affidavit attached to defendant's answer in ruling on Rule 12(c) motion without converting motion into a motion for summary judgment).

(when in fact, the sale never ended), failed to comply with the West Virginia Telemarketing Act, charged an unlawful restocking fee, misled consumers about the identity of the telemarketer and the purpose of the call, and sold products with an illusory value. According to the WVAG complaint, these actions violated the West Virginia Telemarketing Act ("Telemarketing Act"), W. Va. Code § 46A-7-101 *et seq.*, the West Virginia Prizes and Gifts Act ("Prizes and Gifts Act"), W. Va. Code § 46A-6D-1 *et seq.*, and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101 *et seq.*

No specific WVAG claim is relevant for this coverage action, as NuWave does not argue that a specific claim brings the WVAG action within the scope of Cincinnati's coverage. Rather, NuWave looks to various facts in the complaint when it argues that the WVAG action falls within the scope of Cincinnati's PAI coverage. The WVAG complaint alleges that NuWave employed "objectionable practices" in connection with "the aggressive upsale of products and services from other vendors." Doc. 53-3 ¶ 41. The only specific example of this objectionable practice that NuWave points to is that of a phone call with consumer Bernie Mays. NuWave's telemarketer allegedly coerced Mays into buying additional products sold by other undisclosed sellers and compelled Mays to stay on the line longer than he wanted in order to purchase the product that he had initially called to buy. Despite Mays' repeated requests to speed up the call, the telemarketer employed various tactics to keep him on the line. According to the WVAG complaint, the "consumers who called NuWave to purchase [their products] did not know that their NuWave purchase would not be consummated until they were also subjected to a sales presentation, sometimes high pressure, to purchase goods or services of dubious if any value." Doc. 53-3 ¶ 90. The WVAG complaint specified that the "relevant period of time for this civil

3

action" continued "up to and including the present"—which, given when the West Virginia Attorney General filed the complaint, was October 2015. Doc. 53-3 ¶ 27.

## LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Both parties seek a declaration regarding Cincinnati's duty to defend NuWave in the WVAG action. For the Court to determine whether Cincinnati had a duty to defend, it must first determine whether the facts alleged in the WVAG complaint fall within the scope of the Policies. NuWave alleges that a violation of consumers' rights to privacy is implicit in the WVAG complaint, and thus it triggers coverage under the PAI liability section of the Policies.

4

Cincinnati responds that none of the facts alleged implicate the consumers' right to privacy, and so the WVAG action simply does not fall within the Policies' coverage.

To determine if an insurer has a duty to defend, the Court "must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314, 223 Ill. 2d 352, 307 Ill. Dec. 653 (2006).[3] An insurer may have to defend its insured even though coverage may not ultimately be found. *See Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017, 237 Ill. 2d 446, 341 Ill. Dec. 497 (2010). This is because the duty to defend arises if the facts alleged in the complaint "fall within, or potentially within, the policy's coverage." *Valley Forge*, 860 N.E.2d at 314–15. In other words, "the complaint need present only a possibility of recovery, not a probability of recovery." *Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 578 N.E.2d 1003, 1006, 218 Ill. App. 3d 956, 161 Ill. Dec. 357 (1991). An insurer may only refuse to defend if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge*, 860 N.E.2d at 315. Any doubts as to the duty to defend are to be resolved in the insured's favor. *Hilco Trading, LLC v. Liberty Surplus Ins. Corp.*, 8 N.E.3d 166, 174, 2014 IL App 1st 123503, 380 Ill. Dec. 235 (2014).

The question then becomes whether the consumer's right to privacy could possibly include the right to be free from prolonged phone calls. NuWave frames this as a right to be free from nuisance and focuses much of its argument on this issue on the Illinois Supreme Court's decision in *Valley Forge*. In *Valley Forge*, the insured instituted a coverage action, seeking

---

[3] The parties do not dispute that Illinois law applies to the insurance coverage issues before the Court. *See Auto-Owners Ins. Co. v. Websolv Computing Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991)).

coverage for an underlying case where it had allegedly sent an individual an unsolicited fax in violation of the Telephone Consumer Protection Act ("TCPA"). 860 N.E.2d at 310. The court considered whether the right to privacy in a PAI liability clause included intrusions upon seclusion, or merely covered violations of secrecy. *Id.* at 313–14. It concluded that the right to privacy in this context included the right to seclusion and held that the insurance company had a duty to defend the insured. *Id.* at 323. According to NuWave, this holding can be extrapolated to also find that, in a situation where the insured prolonged a phone call that the consumer voluntarily and intentionally made to the insured, the insured violated the consumer's right to privacy. NuWave characterizes the *Valley Forge* holding as extending the right to privacy in this context to include the "right to be free from nuisance." Doc. 61 at 4. In reality, the court mentions "the right to be free from nuisance" in a parenthetical describing a district court from the Eastern District of Pennsylvania's discussion of the goals of the TCPA. *Valley Forge*, 860 N.E.2d at 316. The only other time the word nuisance is used in the opinion is in a different parenthetical. *Id.* at 319. NuWave's characterization here is misleading.[4]

NuWave provides no other support for its contention that the right to privacy in a PAI liability clause includes the right to be free from nuisance. The *Valley Forge* definition of privacy, based on Black's Law Dictionary, is instructive here:

> Black's Law Dictionary defines 'right of privacy' as '[t]he right to personal autonomy' and, alternatively, as '[t]he right of a person and the person's property to be free from unwarranted public scrutiny or exposure.' The definition also refers the reader to the entry for 'invasion of privacy,' which is defined as '[a]n unjustified exploitation of one's personality or intrusion into one's personal activities' and includes 'invasion of privacy by intrusion' and 'invasion of privacy by disclosure of private facts.' The former is defined as '[a]n offensive, intentional interference with a person's seclusion or private affairs,' and the latter as '[t]he public

---

[4] Cincinnati attempts to clear this confusion up in its response, Doc. 66 at 6, although it appears to have fallen on deaf ears, Doc. 67 at 3.

>revelation of private information about another in an objectionable manner.'

*Id.* at 317 (citations omitted). The flaw in NuWave's argument is that neither invasion of privacy by intrusion nor invasion of privacy by disclosure of private facts is present in the WVAG action. The Court has seen no mention that NuWave released any private facts about anyone.

The WVAG complaint also does not allege that NuWave's telemarketers invaded Mays' (and other consumers') right to seclusion, because it is clear in the WVAG complaint that Mays himself reached out to the NuWave telemarketer. Doc. 53-3 at 33. Unlike the unsolicited fax in *Valley Forge*, the WVAG allegations that NuWave raises did not mention any unsolicited communication by a NuWave telemarketer. The only specific communication that NuWave mentions as an example from the WVAG case is a phone call where the consumer himself called the telemarketer, which is not the type of privacy violation contemplated by intrusion on seclusion. *See Mlynek v. Household Fin. Corp.*, No. 00 C 2998, 2000 WL 1310666, at *3 (N.D. Ill. Sept. 13, 2000) (noting that "the tort of unreasonable intrusion upon the seclusion of another depends upon some type of highly offensive prying into the physical boundaries or affairs of another person" and that "the core of this tort is the offensive prying into the private domain of another" (internal quotation marks omitted)). The Illinois Supreme Court has listed examples of when this tort might arise: "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted phone calls." *Lovgren v. Citizens First Nat. Bank of Princeton*, 534 N.E.2d 987, 989, 126 Ill.2d 411, 128 Ill. Dec. 542 (1989). Keeping a consumer on the phone longer than he wants to be, after he voluntarily and intentionally called, does not match the type of situation that qualifies as an intrusion on seclusion. Illinois law requires that any doubts be

7

resolved in favor of the insured, but NuWave has failed to establish any possibility that the WVAG action is covered under the Policies.

Cincinnati sets forth other arguments supporting its contention that the WVAG action does not fall under the coverage of its Policies, including that none of the WVAG claims seek to recover "damages because of" PAI and that various exclusions on the Policies bar coverage. The Court finds it unnecessary to consider those arguments given that it has already found that the WVAG action is not covered by the PAI liability clause (the only portion of the Policies that NuWave argues entitles it to coverage). Because the WVAG action is not covered by the Policies, the Court finds that Cincinnati had no duty to defend NuWave in that action.

## CONCLUSION

For the foregoing reasons, the Court grants Cincinnati's motion for judgment on the pleadings [65] regarding its duty to defend and denies NuWave's motion for judgment on the pleadings [58 and 61].

Dated: September 5, 2018

                                                                              _____
                                                                              SARA L. ELLIS
                                                                              United States District Judge